[Crim. No. 6755. Fourth Dist., Div. One. Apr. 13, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
LEE ROY CASTELLANO, Defendant and Appellant.

## COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, J. Perry Langford and William Hargreaves for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Bernard A. Delaney, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**\*—Defendant Lee Roy Castellano has appealed from a judgment imposing a prison sentence after a jury found him guilty of first degree robbery (Pen. Code, § 211), and found he had used a firearm in the commission of the robbery within the meaning of Penal Code section 12022.5.

Castellano admitted five of seven charged prior felonies; the other two were dismissed by the district attorney.

The judgment was affirmed by this court in an opinion by Mr. Justice Whelan, concurred in by Acting Presiding Justice Ault, and by Mr. Justice Cologne on March 13, 1975.

The Supreme Court granted a hearing and on October 25, 1977, retransferred the case back to this court for reconsideration in light of *People* v. *Hunt,* 19 Cal.3d 888 [140 Cal.Rptr. 651, 568 P.2d 376].

---

\*Before Brown (Gerald), P. J., and Cologne, J. Staniforth, J., deeming himself disqualified, did not participate in this case.

We adopt the statement of facts and the discussion of the initial issues as set forth in Mr. Justice Whelan's opinion:

"On September 3, 1973 (Labor Day), at approximately 9:10 p.m., a Kentucky Colonel Fried Chicken shop located on Rosecrans Avenue in San Diego was robbed by a male individual armed with a loaded revolver. After having been on the premises for about five minutes, the robber departed with approximately $480. All five employees of the establishment identified defendant as the robber.

"The manager of the shop, Jackie Ray Briddell, was shown a series of photographs by the police about two weeks after the robbery. He had noted the robber wore a moustache, yet he selected the photograph of defendant which showed him cleanshaven. He did not remember any chin hair, and made no mention of a birthmark; he said defendant wore a plaid jacket during the robbery.

"The manager saw a revolver in defendant's hand, and saw bullets in the cylinder. He had seen defendant in November in a court proceeding and then recognized him as the robber. His in-court identification of defendant as the robber was positive.

"Marsha Heidt, a sales clerk, in the shop, at a distance of a few feet, saw the robber with a pistol that had a cylinder in which she saw bullets. She said the robber had a drooping moustache, a few days' growth on his chin, and an irregular reddish birthmark on his cheek.

"Within an hour she and three other witnesses were asked to draw a pencil sketch of the robber's face. Her sketch showed the birthmark and chin hair. About two weeks later she was shown five black and white photographs, from which she chose that of defendant. Her in-court identification was positive.

"Lori Uhlman, a sales clerk and sister of Marsha Heidt, saw the robber at close range as he directed a gun at her. She described his dress, which included a maroon, gray and black jacket. She did not observe the birthmark, but saw the moustache and short chin hair, of three or four days' growth. About two weeks later she was shown a group of five photographs, from which she selected that of defendant. Her courtroom identification of defendant as the robber was positive.

"One of the witnesses, Sidne Stice, had left California for Michigan two weeks after the robbery. She had seen neither defendant nor any photograph of him between the time of the robbery and the date on which she testified. Her in-court identification of defendant was positive. During the robbery she had observed the birthmark on the robber's left cheek, that there was hair on his chin as though he was trying to grow a goatee or had forgotten to shave for a couple of days.

"Mark Steven Francisco was working as a cook in the establishment. He saw the robber with a gun in his hand, and saw bullets in the cylinder. The witness described a maroon, gray and black Pendleton plaid jacket, a drooping moustache and incipient goatee. He did not observe a birthmark. He was shown a group of five color photographs and selected that of defendant, whom he positively identified as the robber at trial.

"Both groups of photographs were from the upper torso upwards.

"Lloyd R. Cox, a San Diego police officer, showed the group of five black and white photographs to Briddell, Heidt and Uhlman on September 17. The group of color photographs had been taken on September 19, of which that of defendant was shown by Cox to Francisco in November. Cox did not say or suggest to anyone that the robber was the subject of any of the photographs. Each witness was interviewed and shown the photographs apart from the other witnesses. Cox asked the witnesses 'to look through the photographs and see if anyone looked familiar to them'; he did not indicate any one of the subjects to any witness or say that another witness had made an identification.

"One witness for the defense testified that on the night of the robbery defendant was working as a parking lot cleaner from approximately 6:30 p.m. until 5 the next morning, September 4; that he was under the direct supervision of the witness, his employer.

"Other witnesses for the defense had seen a man with a moustache working with defendant's employer at a parking lot that night. Another witness, to whom defendant was known, said he had seen defendant shortly after 7 o'clock that evening.

"The records kept by the employer showed payments made to defendant both before September 3 and after September 4, but none for either of those two dates.

 "Defendant contends it was error to admit the photographs into evidence.

"We have examined the photographs shown to the witnesses. The photograph of defendant in the group of black and white pictures showed him to be cleanshaven, except for a faint growth on the upper lip, and showed a small spot of some kind on his left cheek which might have been a birthmark. Of the other subjects in the group, one had an incipient moustache and chin whiskers and two others had a slight growth of chin hair. So far as can be determined, the hair coloring of the five subjects was much alike.

"In the group of color photographs, all the subjects had moustaches of the type described by the witnesses. Defendant and three of the other subjects had some growth of hair on the chin, and all the subjects were of the same general coloring. The birthmark on defendant's left cheek was reddish brown in color and much smaller than a ten-cent piece. Another of the subjects with moustache and chin whiskers had a small natural blemish on his left cheek, in much the same position as that on defendant.

" 'In Simmons v. United States, . . . 390 U.S. 377, 385, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, the court said: "[W]e hold that each case must be considered on *its own facts*, and *that convictions based on eyewitness* identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." ' . . .

"The trial court might properly find that the photographs, and the manner of showing them to the witnesses, were not unduly suggestive. The fact defendant's photograph, in the group of black and white photographs, was the only one showing a person with a birthmark did not make it unduly suggestive.

 "Where identification evidence is shaky and there is evidence as to alibi, error in the admission of identification evidence or illegality in

the identification procedures may compel reversal. (*People* v. *Banks,* 2 Cal.3d 127 [84 Cal.Rptr. 367, 465 P.2d 263]; *People* v. *Citrino,* 11 Cal.App.3d 778, 784 [90 Cal.Rptr. 80].)

■ "Here there was no error, and the identification evidence was anything but shaky. Each of five witnesses was positive defendant was the robber. With several of them the birthmark played no part.

"To the extent that distinctive physical characteristics played a part in an identification, what was said in *People* v. *Lawrence,* 4 Cal.3d 273, 278-279 [93 Cal.Rptr. 204, 481 P.2d 212], has application: 'As long as the photographs from which the witness made his identification are preserved and available at trial, counsel for the accused, by using them in cross-examination of prosecution witnesses, can easily reveal the possibility of prejudice and thereby impugn the identification testimony.'

"There was no error in permitting, over objection, the admission of the photographs shown to the witnesses and the fact that the witnesses identified photographs of defendant as those of the robber.

"There is nothing in the cases cited by defendant that compels a contrary conclusion. (See *People* v. *Caruso,* 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336]; *Foster* v. *California,* 394 U.S. 440 [22 L.Ed.2d 402, 89 S.Ct. 1127].)

■ "Defendant assigns as error the court's refusal to give a requested instruction which his brief denominates a '*Sears* instruction.' That characterization derives from certain language in *People* v. *Sears,* 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847], which some members of the criminal bar have interpreted as authorizing defense counsel to devise a form of so-called instruction on the law tailored to present judicial comment upon testimony favorable to the defendant, or judicial analysis of prosecution evidence as giving rise to a reasonable doubt upon some issue essential to proof of the charge.

"The language of *People* v. *Sears,* [*supra,*] 2 Cal.3d 180, 190 . . . , which is looked to as authority for the proposition that the requested instruction should have been given is as follows: '[A] defendant, upon proper request therefor, has a right to an instruction that directs attention to evidence from a consideration of which a reasonable doubt of his guilt could be engendered.'

"*Sears* did not originate the phrase. It first appeared in the precise form repeated by *Sears* in *People* v. *Granados,* 49 Cal.2d 490, 496 [319 P.2d 346]. *Granados* cites in support of the language borrowed from

it by *Sears*: *People* v. *Kane*, 27 Cal.2d 693, 699 [166 P.2d 285]; *People* v. *Plywood Mfrs. of Cal.*, 137 Cal.App.2d Supp. 859, 872 [291 P.2d 587]; and *People* v. *Wilson*, 100 Cal.App. 428, 431 [280 P. 137].

"In *Granados*, the instruction was that if the jury had a reasonable doubt that the defendant in a murder case had committed a violation of Penal Code section 288, he could not be found guilty of first degree murder.

"*People* v. *Whitehorn*, 60 Cal.2d 256 [32 Cal.Rptr. 199, 383 P.2d 783], also dealt with a felony murder trial and an instruction that if the jury had a reasonable doubt that the crime of rape had been committed the defendant could not be found guilty of first degree murder.

"The *Granados* and *Whitehorn* instructions were typical of the form of the instruction considered in each of the cases on the subject mentioned in *Sears*.

"In *People* v. *Kane, supra*, 27 Cal.2d 693, 699, it is said: ' "[T]he defendant had a right to ask an instruction that if there was a reasonable doubt as to this essential fact, the defendant should have the benefit of it." '

"In *People* v. *Wilson, supra*, 100 Cal.App. 428, 431, the requested instruction was this: ' "[I]f the defendant was at some other place at the time *of* it is alleged or proven that the crime was committed, it is what in law is called an alibi. When satisfactorily proven it is a good defense in law. Whether or not an alibi was proven and established to your satisfaction in this case, is a fact for you to decide from all the evidence introduced before you and if you believe that the defendant was not present at the time it was alleged or proven that the crime was committed, and therefore could not have committed the crime, charged in the information, and did not aid or abet in its commission, then you should find him not guilty." '

"*People* v. *Garcia*, 2 Cal.2d 673, 683 [42 P.2d 1013], although cited in *Sears*, is not illuminating as to what kind of instruction a defendant is entitled. It mentions the refusal to give certain requested instructions of the defendant, none of which was quoted, and all of which were held to have been covered. The instruction given serious discussion was the following given by the court: ' "In criminal cases, the proof of the moving cause is permissible, and oftentimes valuable, but it is never essential. Where the perpetration of a crime has been brought home to a defendant, the

motive for its commission becomes unimportant. Evidence of motive is sometimes of assistance in removing doubt and completing proof which might otherwise be unsatisfactory, and that motive may be shown by positive evidence or gleaned from the facts and surroundings of the act; then proof of the motive becomes a circumstance, but nothing more than a circumstance, to be considered by the jury, and its absence is equally a circumstance in favor of the accused, to be given such weight as the jury deems proper. But proof of motive is never indispensable." '

"In *People* v. *Moore,* 43 Cal.2d 517, 527-528 [275 P.2d 485], the requested instruction was as follows: ' "You are instructed that if you believe from the evidence that prior to the 6th day of May, 1952, the defendant Patricia G. Moore had received information either from the deceased. or other persons, of threats against her life or person made by the deceased Telford I. Moore she is justified in acting more quickly and taking harsher measures for her own protection in event of assault, than would a person who had not received such threats and if you should believe from the evidence that the deceased did make threats against the defendant and because thereof defendant had reasonable cause to fear greater peril than she would have had otherwise, you are to take such facts into consideration in determining whether defendant acted in a manner which a reasonable person would act in protecting his or her own life or bodily safety." '

"In *People* v. *Cook,* 148 Cal. 334, 336-337 [83 P. 43], the essence of the refused instruction was that the defendant would not be deprived of his right of self defense or denied the effect of the rules relating to voluntary manslaughter, although it might appear that he had committed another crime not involving the subject of the homicide or an act of violence.

"In *People* v. *Eckert,* 19 Cal. 603, 604-605, the instruction read: ' "If they shall find that there is a reasonable doubt of Vance & Reed selling the cow to the Bakers, that defendant sold to Woolridge, they will give defendant the benefit of the doubt, and find the defendant not guilty." '

"In *People* v. *Plywood Mfrs. of Cal., supra,* 137 Cal.App.2d Supp. 859, 874-875, the refused instruction was that each essential element of the crime had to be proved beyond a reasonable doubt.

"One of the instructions requested in *People* v. *Mayo,* 194 Cal.App.2d 527, 536 [15 Cal.Rptr. 366], was simply statements of law; whether the second was such is questionable. The judgment was reversed because the

reviewing court found the evidence insufficient to support the verdict of guilty of failing to stop after an accident involving personal injury. (Veh. Code, § 20001.)

"In *People* v. *Cohn,* 94 Cal.App.2d 630, 638 [211 P.2d 375], the instruction was directed to the limited purpose for which certain telephone conversations were admitted and that they could not be considered as evidence of the truth of anything said or as binding on the defendants who did not participate in them. *Cohn* was cited in *Sears* as authority for the proposition that a more specific instruction should be given when requested, although a general instruction on the same subject has been given.

"Defendant's proposed instruction was of the class embodying judicial analysis of the prosecution's evidence to the anticipated benefit of the defendant.[1] It contains some correct statements of the law which, if separated from the parts that are not statements of law, might properly have been the subjects of requested instructions. Those portions that are statements of law were covered substantially by an instruction that said:

"[1]The instruction was as follows: '1. One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of providing [*sic*] identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

"'2. Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

"'In identification evidence, what the witness represents as his knowledge must be an impression derived from his own senses.

"'3. You must be satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection. You may take into account both the strength of the identification, and the circumstances under which the identification was made.

"'4. If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

"'5. You may also take into account that an identification made by picking the defendant out of a group of *similar* individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness or one which depicts the defendant in such a manner that is suggestive to the witness.

"'6. I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.' "

'The defendant in this case has introduced evidence tending to show that he was not present at the time and place of the commission of the alleged offense for which he is here on trial. If, after consideration of all the evidence, you have a reasonable doubt that the defendant was present at the time the crime was committed, he is entitled to an acquittal. . . .'

"General instructions also were given on the presumption of innocence and the State's burden of proving guilt beyond a reasonable doubt, on defendant's right to an acquittal should there be a reasonable doubt, and as to criteria for determining the credibility of a witness.

"It may be that somewhere, sometime, some trial judge, under the threat of violating the *Sears* canon otherwise, was persuaded to use the language of the requested instruction in instructing a jury.

"In fact the use throughout of the words 'the witness' suggests the instruction may have been borrowed in *haec verba*, since in the case at bench there were five separate identifications, unrelated except as to the time of the original contact, and, as to some of them, the time of a subsequent identification. Whatever its origin and history, it is not in its entirety a statement of the law. Without attempting a thorough analysis of the parts that are not a statement of law, it is apparent that it neglects factors that may enter into the correctness of the first identification of a defendant in person after the crime, such as recollection refreshed by the viewing of a photograph, often condemned because of suggestiveness, but when free of suggestiveness an aid to reliable memory.

"As mentioned, the requested instruction in the case at bench contains statements of the law that in general are correct. The first two sentences and the last sentence of the first paragraph are such; so is the first sentence of the sixth paragraph. In the remainder, the distinction between identity, which was an issue, and the process of identification by a witness, a matter going to credibility, is blurred, perhaps with intent to confuse. It is framed as though there were only one identification instead of five, any one of which might be sufficient. It has the added vice of including corrosive analysis of the prosecution evidence as though that, too, were a matter of law.

"The duty of the judge to instruct the jury on points of law is inherent in his declaration to the jury that they are the exclusive judges of the fact and that they must take the law as he declares it to them. That duty is

also defined by statute in Penal Code section 1093: '6. The judge may then charge the jury, and must do so on any points of law pertinent to the issue, if requested by either party; . . .' and, in Penal Code section 1127: 'Either party may present to the court any written charge on the law, *but not with respect to matters of fact,* and request that it be given. If the court thinks it correct and pertinent, it must be given; if not, it must be refused. . . .' (Italics added.)

"Here, an instruction stating that one of the facts to be determined, and as to which the jury must be convinced beyond a reasonable doubt, was whether defendant committed the crime, could have been requested and, if requested, should have been given. (*People* v. *Sears, supra,* 2 Cal.3d 180.) Such an instruction could have pointed out that the evidence on that score was conflicting between the eyewitnesses to the crime on one side, and the witnesses as to the defendant's presence elsewhere on the other side, and that in evaluating their testimony the jury should be guided by the rules declared elsewhere in the instructions.

"The judge's right to comment on the evidence has a constitutional base. Article VI, section 10 declares: 'The court may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause.'

"That right, also, is declared by Penal Code sections 1093 and 1127. Section 1093 declares also that the judge 'may state the testimony.'

"The only substantial and direct evidence contradictory to the evidence involving identification that defendant committed the crime was the testimony as to alibi. Any fair and careful comment upon the credibility of the identifications made by five different witnesses would discuss their testimony with relation to testimony defendant was elsewhere at the time of the robbery, as well as the testimony of each of the identification witnesses with relation to the duration and other circumstances of the initial contact with the robber and the length of time between that contact and the first identification thereafter, the circumstances under which that identification was made, and the apparent readiness and certainty or lack thereof of each witness in giving his testimony as to identity. In short it would be part of a general summing up in the manner of the English trial judge.

"Assuming that a defendant has a right to request that a judge comment, and that a judge has a duty, if requested, to comment upon the

evidence in this way, such comment should, in the interests of justice, not be limited within an area selected by the defendant, nor given in language of his choosing.

"None of the cases cited in *Sears* says, and *Sears* itself does not say, that upon request the judge must direct the attention of the jury to specific testimony and tell the jury it may look to that testimony for the purpose of forming a reasonable doubt on an issue.

■ "It is not for the trial judge to say that certain testimony should raise a reasonable doubt in the minds of the jurors as to an essential element of the People's case. If there is testimony which, if believed, would be a complete defense, show the nonexistence of a certain essential element of the crime, or compel a reduction in the degree, an instruction that if the testimony is believed a certain legal effect will follow would be proper and the subject of a request by the defense under *People* v. *Sears* and its progenitors.

"If there is no substantial evidence to support the charge, or to support the higher degree of a crime, or if there is a reasonable doubt as to the truth of the charge, the trial judge should so declare. That is a matter of law.

"However, it is not a matter of law for the judge to say that certain evidence might give rise to a reasonable doubt as to the affirmative of an issue required to be proven by the prosecution. That is a comment on the evidence and any such comment should be identified as such.

■ "Clearly the code mention of comment upon the credibility of the witnesses does not refer exclusively to the desire or intention of a witness to be truthful or the subjective credibility of the witness, but rather to the objective credibility, which embraces a consideration of all influences, conscious or unconscious, that might affect the testimony of what the witness perceived.

"Much of what is contained in the requested instruction is just such comment on the credibility of witnesses in general, without being related to a specific witness, and is not a statement of the law applicable to the case.

■ "When a judge charges the jury as to the law, he should state he is doing just that; when he has finished his instructions as to the law and

intends to comment on the evidence or the credibility of witnesses, he should make it clear that he is doing so.

■ "There was no error in the court's refusal to give the instruction in the form requested.

"Had there been error in that regard, it could not have resulted in a miscarriage of justice. The testimony as to alibi, concerning which the jury was adequately instructed, aroused no reasonable doubt in the minds of the jury that defendant could have been present when the crime was committed. The testimony of five eyewitnesses, with sufficient opportunity to observe, which was clear, firm and apparently convincing, was overwhelming that defendant was the robber.

■ "There was no error in the trial court's ruling that the People's case did not rest substantially on circumstantial evidence. It is for the court to determine whether testimony is circumstantial, rather than direct, evidence. It was not error for the court to refuse to give CALJIC Instruction 2.01.[2]

"The process by which the police officer selected the photograph of defendant to include in those shown the witnesses was based upon circumstantial evidence.

"If the witnesses, in testimony, described the robber's appearance and clothing, without more, and if identification, as the issue before the jury, rested upon defendant's correspondence to that description, the identification would be based upon inferences.

■ "Circumstantial evidence is not what enters into the mental process of a witness in arriving at his belief in a matter to which he testifies as a fact. A witness who, when asked the color of a jacket, says 'green,' does not give hearsay testimony because at some forgotten time his mother told him a certain color was green. His testimony does not

---

"[2]The requested instruction reads as follows: "You are not permitted to find the defendant guilty of [the] [any] crime charged against him based on circumstantial evidence unless the proved circumstances are not only consistent with the theory that the defendant is guilty of the crime, but cannot be reconciled with any other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt has been proved beyond a reasonable doubt.

" 'Also, if the evidence [as to any particular count] is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject the other which points to his guilt.' "

take this form: 'The jacket was of a color I have been told is green.' Circumstantial evidence is the evidence that has influenced the minds of the jury in arriving at the belief that a certain matter is a fact although no witness has testified directly that it is a fact.

■ "We reject defendant's contention that because the court did not use the words 'robbery of the first degree' in pronouncing judgment, the crime automatically became robbery of the second degree.[3]"

"[3]On the day set for pronouncement of judgment, the trial court, before asking whether there were legal cause why judgment should not be pronounced, said to defendant: 'You were heretofore arraigned under Information number, District Attorney No. 87223, CR-30203, charging that on or about September 3, 1973, you did feloniously rob a person of personal property by means of force and fear in violation of Penal Code Section 211.

" 'In addition, it is alleged that you committed the above robbery while armed with a dangerous weapon.

" 'In addition, it is alleged that you did use a firearm, a revolver, in the commission and attempted commission of the above-described felony, in violation of Penal Code Section 12022.5. That is the only amendment to the Information, the addition of a revolver. So I am advising you of the fact that that was amended, as you will recall, Mr. Castellano, at the time of trial.

" 'There was no change of plea in this matter and there was no plea of not guilty by reason of insanity in this matter, and jury trial was not waived and the jury did convict Mr. Castellano of the revised Count One, which used to be Count Two in the original Information.

" 'The jury found you guilty of the 211, robbery as charged; found you guilty of using a firearm in violation of Penal Code Section 12022.5. . . .'

"In pronouncing judgment, the court said:

" 'It is a further judgment and sentence of this Court that for the crime of armed robbery, a violation of Penal Code 211, contained in Count One as renumbered of the Information, that the defendant be punished by imprisonment in the State Prison for the term prescribed by law.

" 'I further find that during the commission of the armed robbery the defendant did use a firearm, namely and specifically a revolver in the commission of the said felony, in violation of Penal Code Section 12022.5.

" ' . . . . . . . . . . . . . . . . . .

" 'The record may so show. The judgment will include the finding, a true finding that he admitted the third prior through the seventh prior as shown in the Information. I am looking at the Information filed October 11th, 1973.'

"The minutes of that date recite:

" '[T]he Court finds defendant used a firearm pursuant to Section 12022.5 PC in commission of offense; the Court makes true finding as to priors 3 through 7 previously admitted by defendant . . . .'

"The count of the information of which defendant was found guilty alleged as follows:

" 'On or about September 3, 1973, LEE ROY CASTELLANO did feloniously rob a person of personal property, by means of force and fear, in violation of Penal Code section 211.

" 'And, it is further alleged that the defendant committed the above robbery while armed with a dangerous weapon.

" 'And, it is further alleged that the defendant did use a firearm, a revolver, in the commission and attempted commission of the above-described felony, in violation of Penal Code section 12022.5.' "

In *People* v. *Hunt, supra,* 19 Cal.3d 888 the Supreme Court rejected the contention the trial court had "effectively reduced" Hunt's robbery conviction to second degree when it omitted the first degree finding from the oral pronouncement of judgment. The jury found the robbery was first degree, and the abstract of judgment reflected the jury's finding the robbery was first degree.

In the instant case, as in *Hunt,* the jury found the defendant guilty of first degree robbery. The minutes and the abstract of judgment also recite the first degree finding. The court, however, omitted the first degree finding from the oral pronouncement. " '[B]enefits accrue to the defendant when the *trier of fact* fails to specify the degree of the crime.' " (*People* v. *Hunt, supra,* 19 Cal.3d 888, 895 quoting *In re Candelario,* 3 Cal.3d 702, 706 [91 Cal.Rptr. 497, 477 P.2d 729].)

In the instant case, as in *Hunt,* the trier of fact was the jury. "There was no act or omission on the part of the trier of fact which could be construed as an act of leniency . . . . Moreover, the abstract of judgment reflects the jury's verdicts including the jury's finding that the robbery was of the first degree. The omission occurred *only* in the oral pronouncement of judgment. We stated in *Candelario* that an inference . . . an 'omission was an act of leniency' could be predicated, inter alia, on a record which was silent in regard to a finding of the critical fact. (*Id.,* at p. 706.) The record in the instant case is *not* silent in regard to the finding of the degree of the robbery and, absent other record evidence to the contrary, *Candelario* does not support defendant's claim that an inference of leniency is permissible. . . ." (*People* v. *Hunt, supra,* 19 Cal.3d 888, 896.)

In addition, the court denied a motion for a new trial. Had the court disagreed with the finding of first degree robbery, it could have modified the verdict. The fact it did not do so permits the inference the court's omission of the robbery degree at the oral pronouncement of judgment was an oversight, rather than a deliberate modification of the verdict to second degree (*People* v. *Hunt, supra,* 19 Cal.3d 888, 896, fn. 7).

█ On retransfer to this court, an additional issue was presented, whether two concurring judges alone could decide this appeal. This resulted from Mr. Justice Staniforth's participation in the lower court proceedings by presiding at a readiness conference. Because settlement possibilities are routinely discussed at such conferences, Justice Staniforth has deemed himself disqualified.

The issue arises because this court has not enjoyed its full complement of four justices. The disqualification requires us to determine if two justices may hear and determine the appeal.

Before 1966, article VI section 4a of the California Constitution provided with regard to what were then denominated the District Courts of Appeal that: "The presence of two justices shall be necessary for the transaction of any business by such court except such as may be done at chambers, and the concurrence of two justices shall be necessary to pronounce a judgment."

This provision was construed as authorizing only two justices to render a valid decision in an appeal (*Bracey* v. *Gray,* 71 Cal.App.2d 206, 210 [162 P.2d 314]).

The California Constitution Revision Commission initially proposed that article VI section 3 of the 1966 constitutional revision should provide: "Sec. 3. The Legislature shall divide the State into districts each containing a court of appeal with one or more divisions. Each division consists of a presiding justice and 2 or more associate justices. It has the power of a court of appeal *and shall sit in panels of 3 judges.* Concurrence of 2 judges present at the argument is necessary for a judgment." (Italics added.)

The finally adopted constitutional revision substituted for the above emphasized wording ". . . and shall conduct itself as a 3-judge court."

In our view the change of language between the proposed section and that which was adopted is significant. The District Courts of Appeal were limited by number to three-judge divisions. The 1966 revision authorized additional judges. We construe the language as finally adopted to provide a maximum, rather than a minimum of three judges to conduct the court's proceedings. Since the Constitution retains the requirement two judges present at argument must concur in a judgment, we construe that as the minimum provision.

Judgment affirmed.

Appellant's petition for a hearing by the Supreme Court was denied June 22, 1978. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.