[Crim. No. 17888. First Dist., Div. Three. Jan. 16, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH WATSON, JR., Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clinton R. Jeffers, Chief Assistant State Public Defender, B. E. Bergesen III and Isadora W. Lomhoff, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Blair W. Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SCOTT, J.**—Appellant Joseph Watson, Jr., was convicted after trial by jury of violation of Health and Safety Code section 11351 (possession of

heroin for sale), and of violation of Health and Safety Code section 11350 (possession of cocaine). Appellant and his codefendant, Florie Rollins, were acquitted of violation of Penal Code section 496 (receiving stolen property).

Appellant contends that the court erred in (1) denying his motion to suppress evidence pursuant to Penal Code section 1538.5, (2) denying his motion pursuant to Penal Code section 995 to set aside the information as to the charge of violating Health and Safety Code section 11350, and (3) failing to give certain instructions requested by appellant as required by *People* v. *Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847].

In July of 1976, one Eric Henry was arrested for auto theft and possession of cocaine and marijuana. While in custody, Henry entered into an agreement with officers of the Richmond Police Department that he would operate as an informant to obtain three search warrants in return for his release on the charges then pending against him. One of the three search warrants was to be for the purpose of gathering evidence against appellant, who was nicknamed "Yogi." Henry informed the police that he had previously bought heroin from appellant, and the police wanted Henry to make a "controlled purchase" from appellant. The police had previously, on March 9, 1976, obtained a search warrant for, and searched, the address they believed to be appellant's residence (2900 Pullman Avenue, apartment 117). During that search, balloons, strainers, cutting agents, and a large quantity of cash were found. No heroin was found.

On July 8, 1976, Henry was strip searched and given $25 in marked bills by Detective Browne. Henry was then driven by Detective Smirni to a location in the vicinity of 2900 Pullman. Detective Browne was parked in the same vicinity and observed Henry leave the car and walk to apartment 117. Henry was admitted to the apartment by a person whom Browne could not identify. Approximately two minutes after entering the apartment, Henry left the apartment and met Detective Smirni at a predetermined location where Henry handed the officer a balloon of heroin. Henry told Browne that when he knocked on the door of the apartment, Yogi looked out of the upstairs apartment window and yelled "OK," and the door was then opened. He did not, however, see Yogi when he entered the apartment. Except for the period of time when Henry was in the apartment, he was continually observed by at least one police officer. Browne then obtained a search warrant for the apartment to search for heroin and items used to package and prepare heroin for sale and personal use.

Henry testified at the section 1538.5 hearing. He admitted he agreed to make a buy, denied that he was strip searched, claimed he had been threatened by Detective Browne, claimed the person who answered at apartment 117 told him that Yogi was not home, and claimed he had the heroin on him when he went to the apartment. Henry said he lied to Smirni, when he told him he bought the heroin at the apartment. This testimony was inconsistent with previous testimony at an *in camera* hearing. Henry said that he had been forced to lie at the previous hearing by threats of Detective Browne. The trial court found Henry's testimony at the section 1538.5 hearing to be "inherently incredible."

At trial, Henry refused to testify. However, out of the presence of the jury he claimed that he never went to the Pullman apartments in July 1976 with Smirni. He was not called as a witness before the jury because of his refusal to testify.

Browne and four other police officers executed the search warrant the day after the controlled buy, July 9, 1976. As Browne drove in front of the apartment, he saw appellant and an unidentified person in front of it. Appellant immediately went into the apartment and the door was slammed shut. Browne banged on the door, identified himself, and said he had a search warrant. From inside, appellant was heard to say, "Flo, it's the police." Browne also heard rapid footsteps moving away from the door. At that point, Browne broke the door in with a sledge hammer. An individual identified as Donnie Rollins, the brother of Florie Rollins, was lying on a couch in the living room. Appellant ran upstairs, followed by Browne and another officer. The bedroom door was slammed shut and, as the police officers were opening it, appellant was heard to say, "Get the stuff, Flo. Get the stuff."

Upon search of the apartment, a bindle of white powder, later identified as cocaine, was found in the pocket of a coat that appeared to be appellant's size. The coat was hanging in the closet of one of the bedrooms. One hundred dollars in cash was found in the pocket of a pair of pants, in which a driver's license in appellant's name was also found. These pants were found on the floor of the bedroom.

Appellant and Florie were arrested and taken downstairs. Florie sat on the couch where Donnie Rollins had been lying. The couch had previously been searched, and nothing found. Florie was observed putting her hand in the bathrobe pocket of her son, Mark Jones. Browne reached into Jones' pocket and pulled out a baggie containing several

balloons which were found to contain heroin. At that point, Donnie Rollins said, apparently referring to the bag of balloons, something to the effect that the dope or the heroin was his.

Nine hundred and ten dollars in bills, none of which matched the bills marked the day before, was seized. In addition, a scale, strainers, an emulsifier, eight measuring spoons, a telephone, and two pounds of lactose were seized.

Although the evidence was conflicting, there was substantial evidence from which it could be concluded that appellant either lived at the apartment searched or had continuous access to the apartment for a period of time prior to the execution of the search warrant.

I. Appellant's motion pursuant to Penal Code section 1538.5 to suppress evidence seized in the apartment is predicated upon the alleged invalidity of the search warrant.

A. ■ Appellant's initial contention is that the agreement between Henry and the police, that he would operate as an informant to obtain search warrants in return for his release on charges then pending against him, constituted an invalid contingency fee arrangement giving Henry a strong compulsion to lie. Therefore, a search warrant obtained on the basis of information supplied by him should be held invalid.

In *People v. Sepeda* (1977) 66 Cal.App.3d 700 [136 Cal.Rptr. 119], the court dealt with the admissibility of testimony at trial of paid informants, and stated that "there is no per se prohibition against a police agreement to pay an informant for undercover services upon condition that the informant testify at the criminal trial" (at p. 706). The court ruled, however, that "it is repugnant to the spirit of fundamental fairness for a person to be convicted upon the testimony of a witness who has been given almost insurmountable inducements to testify in a particular fashion and where the corroborating circumstances proving that the witness is telling the truth are at best minimal" (at p. 709).

In *Sepeda*, the police used an informant who had previously been arrested and charged with armed robbery, and who had trafficked in substantial quantities of heroin. He was offered $5,000 for his services and was told that if he told a story at trial completely different from what he told the police previously, he would not receive any payments. The court held that, although the informant's arrangement with the police was

conducive to perjury, there was sufficient corroborating evidence presented to demonstrate that the informant was telling the truth when he testified at trial since the police had taken every precaution to make certain that the informant would be in no position to manufacture evidence against an innocent person.

In this case, Henry was strip searched before entering the apartment and was immediately picked up after he left the apartment. He was under constant surveillance except for the time he was inside the apartment. Therefore, whether or not the arrangement for Henry's release presented "almost insurmountable inducements to testify in a particular fashion," the corroborating circumstances were sufficient to prove that he was telling the truth.

The cases cited by appellant, *People* v. *Medina* (1974) 41 Cal.App.3d 438 [116 Cal.Rptr. 133] and *People* v. *Green* (1951) 102 Cal.App.2d 831 [228 P.2d 867], are distinguishable. In those cases, the witnesses were participants in the crimes for which the defendants stood charged. In *Medina,* the witnesses were promised full immunity if their testimony proved to be totally consistent with what they had earlier told the officers. In *Green,* the witness was promised full immunity on condition that his testimony resulted in a conviction. Also, in those cases, there was very little corroborating evidence to prove that the witnesses were testifying truthfully; most of the corroborating evidence merely showed that crimes had been committed. These distinctions were recognized in *Sepeda* (66 Cal.App.3d at p. 708).

We conclude that there was no impropriety in the arrangement made between Henry and the police which would invalidate the search warrant in the instant case.

B. ▮ Appellant next contends that the release of Henry from custody was invalid in that it was not authorized by Penal Code section 849. Appellant appears to argue that a search warrant based upon any statements made by Henry should be held invalid, presumably to discourage the police from such unlawful practices. Appellant cites no authority in support of this rather novel contention. Without evaluating appellant's contention regarding the police officer's authority under section 849, we conclude that appellant has no standing to complain of such conduct. (See *People* v. *Browning* (1975) 45 Cal.App.3d 125 [119 Cal.Rptr. 420].) Furthermore, there appears to be no justification for applying the exclusionary rule to punish the police for *releasing* an

individual from custody. (See *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].)

C. We turn now to appellant's contentions regarding the insufficiency of the affidavit in support of the search warrant. Appellant points to four specific facts which he alleges should have been placed in the affidavit, as follows:

1) Henry was in custody on charges of auto theft and possession of narcotics when he volunteered the information about appellant;

2) Henry entered into an agreement with the police to help obtain the search warrant;

3) A search warrant almost identical to the warrant in the present case had been executed four months previously and police found no heroin in appellant's apartment on that occasion;

4) The police did not see appellant look out of the upstairs window during the controlled buy and "OK" Henry's admission.

The pertinent law was stated in *Morris* v. *Superior Court* (1976) 57 Cal.App.3d 521, 526 [129 Cal.Rptr. 238]: "if material factual omissions are not intentional and are reasonable under the circumstances, the omitted matters are disregarded and the existence of probable cause is tested by whatever appears upon the face of the affidavit; if the failure to include material information, though not intentional, is negligent, the omitted facts are added to the affidavit and probable cause is tested in light of the additional information." The court further held that when material information is intentionally withheld, the search warrant must be quashed. (See *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77 [104 Cal.Rptr. 226, 501 P.2d 234].)

Appellant claims that the four specific facts were material and intentionally omitted. We conclude that the omissions were not material. ■ The first two facts relate to the reliability of the informant. Appellant claims that the omitted facts are in direct conflict with the "inference that Henry was a reliable informant who had no motive to attempt to deceive the police and who wished to provide accurate information." However, there was no such inference in the affidavit. The affidavit states that the confidential informant had bought heroin from Yogi in the past, that the informant had been strip searched before

being sent to the apartment, that the informant was under constant police surveillance except for the two minutes when he was inside the apartment, and that the informant was strip searched once again when he left the apartment. Nowhere in the affidavit is the informant referred to as reliable. On the contrary, the facts stated in the affidavit clearly indicate that the police did not trust the informant, and therefore they followed procedures that would ensure corroboration. It is generally known that police often resort to the use of paid informants of dubious reliability to make controlled buys of illegal narcotics. The facts presented in the affidavit reasonably indicate that Henry was such an informant. Therefore, the first two omitted facts were not material.

■ The third fact omitted by the police concerning the prior search could not have adversely affected appellant. At the prior search, balloons, strainers, cutting agents, and a large quantity of cash were discovered. An officer who participated in the search stated that in his opinion these items indicated there was heroin packaging and/or sales going on in the apartment. Although no actual heroin was discovered, this information would have *added* to probable cause, rather than detracted from it.

■ As to the final allegation of intentional omission, it appears that Officer Browne clearly listed the facts that he himself observed, and separately listed those that the informant merely told him, including the following: "[Confidential informant] states that the person known to him as 'Yogi' looked out of the upstairs apt. window and yelled 'OK'." Reading the affidavit as a whole, it was clear that Browne, by not mentioning this in the detailed list of what he saw, had not personally observed this. A requirement that Browne expressly state this would require redundancy. The omission was reasonable.

We conclude that appellant's contention that material facts were intentionally omitted from the affidavit is without merit.

D. ■ Appellant finally contends that the affidavit itself fails as a matter of law to set forth sufficient competent evidence to support the magistrate's finding of probable cause to believe that appellant's apartment contained contraband. Appellant claims that the only conclusion that can reasonably be made from the facts set forth in the affidavit is that someone sold the informant balloons of heroin. It is claimed that there is no indication in the affidavit that the person who sold the heroin lived in the apartment, and that the purchase of heroin by an informant from a person neither identified by the police nor shown to be an occupant of the

apartment does not provide probable cause to believe that an ongoing heroin business is operating. Appellant posits that it is "just as likely that the informant knew that heroin could be purchased at that address on alternate Mondays and Wednesdays when appellant was not home; or that whenever appellant went out, persons who sold heroin would 'drop by' to see the other occupants of the apartment." Appellant suggests that Henry could have admitted himself to the apartment and picked up heroin that he had arranged to have placed there.

It is irrelevant that the affidavit did not directly implicate appellant in the sale of heroin. It is enough that it showed probable cause that heroin would be found in the apartment. Additionally, certainty is not required. Probable cause requires merely a "strong suspicion" of the existence of contraband. (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485].) The fact that Henry, under the surveillance of the police officers, obtained heroin from the apartment was sufficient for probable cause to believe that more heroin could be found therein.

II. ■ We now consider appellant's contention that the possession of cocaine charge (Health & Saf. Code, § 11350) should have been dismissed pursuant to his Penal Code section 995 motion. The original complaint did not include the charge. At the preliminary hearing, evidence pertaining to the possession of cocaine charge was admitted over appellant's objection. He contends that since the charge was not included in the original complaint, the evidence presented at the preliminary examination was irrelevant, and thus the subsequent information, filed pursuant to Penal Code section 739, was based on incompetent evidence as to that count.

The issue of relevancy "is a matter within the discretion of the trial court." (*San Diego Gas & Electric Co.* v. *Davey Tree Surgery Co.* (1970) 11 Cal.App.3d 1096, 1103 [96 Cal.Rptr. 889].) Here, one of the issues was whether appellant was involved in the possession of drugs for sale, or whether only Florie and/or Donnie Rollins were involved. The fact that cocaine was found in the pocket of what appeared to be appellant's pants is relevant on this point. The court did not abuse its discretion in admitting the evidence. Therefore, the subsequent information was not based on incompetent evidence.

III. Appellant next contends that the trial court erred in refusing to give his "*Sears* instruction." (*People* v. *Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847].) Appellant requested the following instruction: "In

determining if a reasonable doubt exists as to whether this defendant exercised control or had the right to exercise control over the heroin, or had knowledge of its presence, or had knowledge of its nature as a controlled substance or had the specific intent to sell the heroin, you may consider any of the following evidence:

"1. The lack of motive.

"2. The absence of any showing of previous or subsequent use or association w/narcotics of any type by the defendant.

"3. The location in which the heroin was found and the person in whose possession it was found.

"4. The confession of ownership of the heroin by Donnie Rollins.

"5. The relationship of Donnie Rollins to Florie Rollins and their relationship to apt. 117, 2900 Pullman.

"6. The absence of any showing connecting defendant Watson w/Donnie Rollins at any time before 7-9-76.

"7. Any other evidence tending to show reasonable doubt."

Since *Sears,* there has been a series of Court of Appeal cases which discuss the propriety of the *Sears* instruction as it relates to particular cases. (See *People* v. *Whittaker* (1974) 41 Cal.App.3d 303 [115 Cal.Rptr. 845]; *People* v. *Hernandez* (1971) 18 Cal.App.3d 651 [96 Cal.Rptr. 71]; *People* v. *Castellano* (1978) 79 Cal.App.3d 844 [145 Cal.Rptr. 264].) ■ These cases hold generally that instructions which are argumentative and call upon the jury to consider specific evidence concerning which there was a factual dispute should not be given. The jury was fully instructed in the instant case on general principles of reasonable doubt and evaluation of the testimony of witnesses. The proposed instruction falls within the class of proposed instructions which the appellate courts have found since *Sears* to be improper. The proposed instruction constitutes nothing more than a comment on the evidence. If a judge does comment on the evidence, "such comment should, in the

interests of justice, not be limited within an area selected by the defendant, nor given in the language of his choosing." (*People* v. *Castellano, supra,* at pp. 857-858.) The court properly refused the proposed instruction.

Judgment is affirmed.

White, P. J., and Feinberg, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 14, 1979.