[Crim. No. 19990. First Dist., Div. Two. Nov. 24, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ERICK V. KAISER, Defendant and Appellant.

COUNSEL

James A. Wattson, under appointment by the Court of Appeal, and Wattson & Gianelli for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Tiffany Rystrom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MILLER, J.—Erick Kaiser appeals from a judgment of conviction entered on jury verdict finding him guilty of violating Penal Code section 245, subdivision (a) (assault with a deadly weapon), and Penal Code section 243.1 (battery on a custodial officer).

On April 15, 1978, at approximately 8 p.m., victim Loving had gone to Emby's market in search of his nephew. He found his nephew there and instructed him to ride his bicycle home. Loving went into Emby's

market to make a purchase. Upon Loving's return, his nephew was sitting in Loving's car. The victim again sent his nephew home, "tapping" the child on the head to emphasize his point.

At this point a man walked by the victim and mumbled something about not hitting the child. Loving responded that it was none of the man's business. Loving then turned and started to walk away. As he did, he felt a sharp pain in his arm. He swung around and saw the man holding a knife. A fight followed, and when the victim reached out for the man, he was stabbed in the stomach. Loving fell against the car. The man walked away.

Officer Dorsey arrived at the scene of the stabbing at 8:30 p.m. The security guard at Emby's market told him that he had seen a man in the store with a knife handle sticking up from his back pocket.

A woman at the scene was able to describe the assailant and direct the police to his residence. Officer Dorsey went to appellant's residence and detained him. At that time Officers Dorsey and Weldin noticed a finger on appellant's left hand was freshly cut and bleeding. The security guard from Emby's market was taken to appellant's residence and identified appellant as the man whom he had seen earlier inside the store with a knife in his back pocket. At trial the security guard became evasive and attempted to deny his identification of appellant.

Appellant introduced testimony that he was at a friend's house at the time of the incident. Appellant also testified that he had cut his finger at a telephone booth. His testimony was that the phone malfunctioned and he cracked the receiver.

■ Relying on *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal. Rptr. 156, 465 P.2d 44] and its progeny, appellant contends that the trial court erred in denying his motion for continuance to substitute counsel without inquiring into the particular conduct and events prompting his request.

On June 14, 1979, appellant's case was assigned for trial, whereupon he requested a continuance in order to contact a witness, whose name was not known to him. The motion was denied. At the same time the prosecutor informed the trial court that earlier that day, in the assigning court, appellant had requested permission to discharge his attorney.

The trial court indicated that it would entertain the subject only if it came from defendant, whereupon appellant responded, "That is between me and my attorney, not you."

On the third day of trial, after the jury had been sworn and witnesses summoned, appellant requested that his attorney be discharged on the ground that he was not being properly represented. The court allowed appellant to state his particular complaints. The trial judge proceeded to tell appellant that his attorney had been on top of every issue. Thereafter the trial court and appellant continued discussing whether appellant had another attorney available.

Finally, after more discussion, the trial court granted a recess until 2 p.m. to allow appellant time to contact Mr. Carrol, a private attorney, for his defense. Appellant responded that if he did not have another attorney by 2 p.m., he would stay with his present counsel. However, when asked if that was his promise, appellant conditioned it on a request for another attorney from the public defender's office.

Appellant's attorney stated that the relationship between him and appellant was strained and that there was little cooperation.

At 2 p.m., the defense indicated appellant had not been able to obtain another attorney and was ready to proceed.

■ Due process of law, as it is expressed through the right-to-counsel provisions of the state and federal Constitutions, comprehends a right to be represented by counsel of one's own choice. (*People* v. *Byoune* (1966) 65 Cal.2d 345, 346 [54 Cal.Rptr. 749, 420 P.2d 221].) However, the courts have observed that this right is not absolute. It must be weighed against other values of substantial importance. One such value is the orderly and expeditious functioning of judicial administration. (*United States* v. *Mitchell* (2d Cir. 1966) 354 F.2d 767, 769; *People* v. *Byoune, supra*, at p. 346.)

■ "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' [Citation.]" (*People* v. *Byoune, supra*, 65 Cal.2d at p. 347.)

■ *People* v. *Marsden, supra*, 2 Cal.3d 118, established that a defendant seeking a continuance on the basis of denial of counsel is entitled to be heard on the facts underlying his claim. In the instant case, appellant was given numerous opportunities to voice his complaints regarding the public defender. These complaints were properly found to be without substance.

■ While generally a defendant is entitled to appear and defend with counsel of his own choosing, the right must be asserted in a timely fashion. The trial court may in its discretion, and without further inquiry, deny a motion for a continuance to secure new counsel if the motion is made during trial. (*People* v. *Molina* (1977) 74 Cal.App.3d 544, 548 [141 Cal.Rptr. 533]; *People* v. *Reaves* (9174) 42 Cal.App.3d 852, 856 [117 Cal.Rptr. 163], and cases cited therein.) "An exercise of discretion by a trial court will not be disturbed on appeal, unless it is shown by the defendant that his right to the assistance of counsel was substantially impaired by the continued representation by appointed counsel." (*People* v. *Lindsey* (1978) 84 Cal.App.3d 851, 859 [149 Cal.Rptr. 47].)

■ The record in the instant case amply supports the conclusion that whatever breakdown occurred between appellant and his counsel was caused by appellant's intransigence and failure to cooperate. Such a showing is insufficient to support a motion to substitute counsel. (*People* v. *Floyd* (1970) 1 Cal.3d 694, 705 [83 Cal.Rptr. 608, 464 P.2d 64]; *People* v. *Lindsey, supra*, 84 Cal.App.3d at p. 860.)

The right to counsel cannot mean that a defendant may continually delay his day of judgment by discharging prior counsel. (*United States* v. *Mitchell, supra*, 354 F.2d 767, 769.) It appears from the record that appellant's decision at the last moment to dismiss his counsel was undertaken for the purposes of delay and disruption of the proceedings. We find nothing in the Sixth Amendment to require acquiescence by the trial judge. The burden is on appellant to establish an abuse of discretion in denying his request for substitution of counsel. Appellant has failed to meet that burden.

■ Appellant further contends that the trial court improperly denied his request for self-representation. He argues that the court did not inquire *sua sponte* into the reasons why appellant wanted to represent himself or the reason for the untimeliness of the request. It is also argued that the trial court improperly inquired into appellant's educational background in making its decision.

At certain points during appellant's dialogue with the trial court, appellant indicated he wanted to represent himself. Having read the preliminary hearing transcript during break, the trial judge found appellant's motion for self-representation untimely. The court gave the following reasons for its denial of appellant's motion: (1) Appellant had problems with his public defender at the preliminary hearing and requested his present counsel be substituted in; (2) the case was ready for trial on August 17, 1978, with appearances on August 24 and December 6, 1978, and March 8, May 3, June 12, 13, and 14, 1979; and (3) the motion was made after two days of trial when jury selection was completed and opening statements made.

It was well within the trial court's discretion to deny the motion. Appellant's request was not timely made. (See *People* v. *Windham* (1977) 19 Cal.3d 121 [137 Cal.Rptr. 8, 560 P.2d 1187] [motion to proceed in pro. per. made two days after trial began is untimely].)

Contrary to appellant's assertion, it is recommended that a court inquire into a defendant's intellectual capacity when making a decision on a motion for self-representation. The inquiry may include questions into his educational background. (*People* v. *Lopez* (1977) 71 Cal.App.3d 568, 572-573 [138 Cal.Rptr. 36].)

Appellant has failed to show that the trial judge abused his discretion in denying his request for self-representation.

■ Appellant next contends the victim's in-court identification of him was improper. The People were unable to produce the photographs used in the pretrial photo lineup, by which appellant was identified. Appellant argues if the pretrial photo lineup was suggestive, the in-court identification must be suppressed. He further argues that the inability of the People to produce the subject pictures denied him due process in that he was prohibited from testing the suggestiveness of Sergeant Smith's photo lineup procedure.

On April 17, 1978, Sergeant Smith visited the victim in the intensive care unit at the hospital. He showed the victim a series of photographs. From these the victim picked the booking photo of appellant as his assailant. Sergeant Smith then returned to the police station and replaced the booking photos in a drawer containing many other booking photos. Smith was not able to reconstruct the photo array presented to the victim.

At a pretrial hearing appellant moved to have the in-court identification testimony excluded. The grounds were the failure of the People to reconstruct the photo lineup. Appellant argued that the in-court identification testimony was tainted. The motion was denied.

The issue on appeal is whether the failure to produce the photographs precludes the defendant from obtaining a fair trial.

In *People* v. *Bethea* (1971) 18 Cal.App.3d 930 [96 Cal.Rptr. 229], the defendant urged that the burden was upon the People to show that the in-court identification was free from the taint of an impermissibly suggestive pretrial photographic identification. The defendant argued that when the People failed to produce the photographs at trial, this failure, as a matter of law, established that the photographic identification was improper. In rejecting the defendant's contention, the court held, "The mere claim of unfairness is not enough. The [People's] burden does not arise until there is some evidence that the photographic identification procedure was impermissibly suggestive." (P. 938.) The court then concluded that there was "... no evidence of undue suggestion created by the procedures used. The testimony of the witness is clear and frank, and there is no hint of connivance, evasion, or skulduggery on the part of the police." (*Ibid.*) The court concluded that the witness' identification was based on his personal observation of this defendant at the time of the commission of the alleged crime, and noted that there was no evidence indicating that the in-court identification was in any way tainted by the photographic lineup.

The photographs of the subjects should have been preserved by Sergeant Smith. He testified that his reason for not doing so was his unfamiliarity with the photo lineup procedures.[1] However, he testified that as he selected the various photographs, it was his intention to pick photographs that were similar in appearance to appellant; all of them were Mexican or Filipino, and each depicted men with facial hair and hair styles similar to appellant's. When showing him the folder with

---

[1]With reference to the failure of the officer to produce the photographs herein, it appears that such failure resulted from inadvertence or negligence and not for the deliberate purpose of suppressing the truth. Sergeant Smith had been promoted just 10 days before. However, it is the duty of the officers to preserve the photographs which are used for identification, and the better practice would be to make a list of the photographs so used. However, to punish the prosecution for this kind of unintentional act is to put form over substance and bring justice into disrespect.

these pictures, Sergeant Smith told the victim that the picture of the person causing the injury might or might not be included in the photo lineup. He suggested that the victim see if any of the pictures depicted the person who had stabbed him.

The victim testified he was on pain killers at the time he viewed the photos. He remembered there were four or six pictures but was not sure if they were in color. At trial the victim indicated his in-court identification was based on his observation of appellant on the night of the stabbing and was not influenced by the photo lineup. On the night of the incident, the victim spoke with appellant and observed him from a distance of not more than 4 feet away for 10 to 12 minutes.[2]

Furthermore, during the trial, appellant availed himself of the opportunity to throughly cross-examine both the victim and Sergeant Smith in an effort to expose to the jury the potential for error in the pretrial, photo lineup method.

A mere claim that the procedure might have been unfair is not enough to require that the People must produce the photographs where evidence establishes their nonavailability is due to inadvertence and not intended destruction. (*People* v. *Dewberry* (1974) 40 Cal.App.3d 175, 180 [114 Cal.Rptr. 815]; *People* v. *Apo* (1972) 25 Cal.App.3d 790, 798 [102 Cal.Rptr. 242].) Consequently, under the circumstances, appellant was not denied a fair trial. There was nothing in the procedure whereby Loving was shown the photographs that was "... so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons* v. *United States* (1967) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967].) The identification testimony was properly admitted.

■ Relying on *People* v. *Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847], appellant maintains his conviction should be reversed because the trial judge refused to give his seven tailored jury instructions. Appellant wanted the jury to consider them with regard to the victim's in-court identification.

---

[2]There is also circumstantial evidence of appellant's guilt. There was a fresh cut with blood on appellant's hand a half hour after the assault on the victim. Also, appellant was identified by the store security guard on the night of his arrest as the man whom he had seen earlier with a knife in his back pocket.

The record indicates the jury was read CALJIC No. 2.91, which sets forth the People's burden of proof in identifying a defendant.[3] In addition to this instruction, appellant requested an additional seven instructions.[4]

In *People* v. *Sears, supra*, 2 Cal.3d 180, the defendant requested an instruction relating circumstantial evidence to the question of premedi-

---

[3]CALJIC No. 2.91 provides: "The burden is on the State to prove beyond a reasonable doubt that the defendant is the person who committed the offense with which he is charged. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant as the person who committed the offense before you may convict him. If, from the circumstances of the identification, you have a reasonable doubt whether the defendant was the person who committed the offense, you must give the defendant the benefit of that doubt and find him not guilty."

[4]The following instructions were requested: "A. You are instructed that the identity of the defendant as the person who committed the crime is an element of every crime. Therefore, the burden is on the state to prove beyond a reasonable doubt not only that the crime alleged was committed, but also that the defendant was the one who committed it. You must be satisfied beyond a reasonable doubt of the accuracy of the witness' identification of the defendant.

"In this regard, you are instructed that it is not necessary for the defendant to prove that another person may have committed the crime, nor is it the burden of the defendant to prove his innocence. If facts and circumstances have been introduced into evidence which raise a reasonable doubt as to whether the defendant was the person who committed the crime charged, then you should find the defendant not guilty of the offense.

"B. In addition to the factors which were previously pointed out for your consideration as to the accuracy of an identification, you should consider whether or not the witness is the same race as the individual he is attempting to identify. If they are not, you should consider the effect this would have on an accurate identification.

"C. You are instructed that if you believe that the in-court identification of the defendant resulted from an unfair photo identification, then you may disregard the in-court identification of the defendant.

"D. Evidence in this case shows that seven photographs shown to the complaining witness are not available for trial as a result of police action.

"In determining whether you are convinced beyond a reasonable doubt as to the accuracy of the identification of the defendant, you should consider that the unavailability of the photographs has interfered with the ability of the defense to cross-examine witnesses about the photographic pre-trial identification.

"E. The evidence in this case shows that at the time the complaining witness selected defendant's photograph, he was at a hospital in intensive care, was under medication, dazed and in pain.

"You may consider whether under these circumstances, the complaining witness was susceptible to suggestion as to which photo he should select.

"F. The evidence in this case shows that at the time that the complaining witness selected defendant's photograph, he was under medication, dazed and in pain.

"You may consider these factors in weighing the accuracy of the identification of the defendant.

"G. If, from the circumstances of the photo identification, you have a reasonable doubt as to whether the defendant was the person who committed the offense, you must give the defendant the benefit of that doubt and find him not guilty."

tation and reasonable doubt. The *Sears* court observed that upon proper request a defendant "has a right to an instruction that directs attention to evidence from a consideration of which a reasonable doubt of his guilt could be engendered." (P. 190.)

Since *Sears*, there have been a series of Court of Appeal cases which have rejected a broad interpretation of that decision. (See *People v. Watson* (1979) 89 Cal.App.3d 376, 386-387 [152 Cal.Rptr. 471]; *People v. Rocha* (1978) 80 Cal.App.3d 972, 979-980 [146 Cal.Rptr. 81]; *People v. Castellano* (1978) 79 Cal.App.3d 844, 852-859 [145 Cal.Rptr. 264]; *People v. Whittaker* (1974) 41 Cal.App.3d 303, 307-308 [115 Cal.Rptr. 845]; and *People v. Hernandez* (1971) 18 Cal. App.3d 651, 660 [96 Cal.Rptr. 71].) "'None of the cases cited in *Sears* says, and *Sears* itself does not say, that upon request the judge must direct the attention of the jury to specific testimony and tell the jury it may look to that testimony for the purpose of forming a reasonable doubt on an issue.'" (*People v. Castellano, supra,* 79 Cal.App.3d at p. 858.)

In the instant case, the trial judge gave CALJIC No. 2.91, which details the People's burden of proof in identifying a defendant. By contrast, the majority of appellant's requested instructions refer to specific and disputed evidence. "[I]nstructions which are argumentative and call upon the jury to consider specific evidence concerning which there was a factual dispute should not be given.... The proposed instruction constitutes nothing more than a comment on the evidence." (*People v. Watson, supra,* 89 Cal.App.3d at p. 386.)

Appellant's first instruction is almost identical to CALJIC No. 2.91 (compare fn. 3 with fn. 4A). In refusing to give this instruction, the trial court indicated CALJIC No. 2.91 as the reason. Because this proposed instruction is repetitive, the court's decision not to give it was proper. (*People v. Rocha, supra,* 80 Cal.App.3d 972, 980.)

We are satisfied from a review of the record that the jury was properly and adequately instructed on all the principles and factual issues that were presented, including the essential instruction relating to the issue of reasonable doubt.

██ Appellant's last contention is that the evidence presented by the People was insufficient to establish a battery on a custodial officer.

■ On appeal this court must view the evidence most favorable to the People and presume in support of the judgment of conviction the existence of every fact which the trier of fact could reasonably deduce from the evidence. (*People* v. *Madison* (1969) 3 Cal.App.3d 984, 986 [84 Cal.Rptr. 71].) "The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt." (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

■ Once taken into custody, appellant was placed in the Oakland city jail. While in the holding cell, appellant began spitting at the officers, rattling the bars, and shouting obscenities. A decision was made to place appellant in the safety cell. As several officers gathered outside, appellant moved to the rear of the cell, assumed a boxer's stance, and told them, "You're going to have to come in and get me." Officer DeShay testified that the officers moved into the cell and grabbed appellant.

Appellant threw several punches, but no one was struck. Appellant continued to strike and kick at the officers the entire 25 feet from his holding cell to the safety cell. Officer DeShay grabbed one of appellant's legs, but it slipped away. DeShay was kicked in the right shin area before regaining hold of appellant's leg.

Appellant was convicted of violating Penal Code section 243.1.[5] This statute has the effect of raising a battery from a misdemeanor to a felony status if the victim is a police officer engaged in the performance of his duties.

A battery is any willful and unlawful use of force or violence upon the person of another. (Pen. Code, § 242.) A specific intent offense may be and usually must be inferred circumstantially. (*People* v. *Pimental* (1970) 6 Cal.App.3d 729, 734 [86 Cal.Rptr. 169].)

---

[5]Penal Code section 243.1 provides: "When a battery is committed against the person of a custodial officer as defined in section 831 of the Penal Code, and the person committing the offense knows or reasonably should know that such victim is a custodial officer engaged in the performance of his duties, and such custodial officer is engaged in the performance of his duties, the offense shall be punished by imprisonment in the state prison."

Applying the foregoing law to the events in this case, we find the evidence of appellant's guilt of battery is plainly sufficient.

Judgment is affirmed.

Taylor, P. J., and Smith, J., concurred.

A petition for a rehearing was denied December 24, 1980, and appellant's petition for a hearing by the Supreme Court was denied January 22, 1981.