10/17/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GARY ALLEN JOHNSON, | H039764 |
| | (Santa Cruz County |
| Petitioner, | Super. Ct. Nos. M64170, AP001660) |
| v. | |
| APPELLATE DIVISION OF THE SUPERIOR COURT OF SANTA CRUZ COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

In this original proceeding petitioner Gary Allen Johnson seeks writ relief from a decision of the appellate division of the Santa Cruz County Superior Court affirming a judgment convicting him of a misdemeanor. Petitioner contends that the appellate division violated Code of Civil Procedure section 77, subdivision (b) (section 77(b)) by hearing his appeal with only two judges rather than the prescribed three.[1] We agree with Johnson that the challenged procedure was unauthorized and therefore grant the requested relief.

---

[1] All further statutory references are to the Code of Civil Procedure except as otherwise indicated.

*Background*

On March 29, 2012, Johnson was convicted of disorderly conduct by lodging in a place "without the permission of the owner or person entitled to the possession or in control of it." (Pen. Code, § 647, subd. (e).) On March 21, 2013, over Johnson's objection, his appeal was heard by a panel of two appellate division judges. At the conclusion of the hearing the panel affirmed the judgment.

Johnson then filed a petition for rehearing, contending that the participation of only two judges at the hearing violated section 77(b) and made the panel more likely to prejudge the outcome and "less susceptible to persuasion by oral argument than they would otherwise be." The appellate division rejected Johnson's arguments and denied the petition, again ruling that two judges were sufficient under section 77(b).

Johnson then sought writ review in this court to enable him to obtain a rehearing before a three-judge panel of the appellate division.[2] He contends that he was deprived of a "crucial part of the appellate process" when only two judges heard his appeal, in violation of section 77(b). In response to this court's request, both respondent superior court and the People, acting as real party in interest, submitted preliminary opposition. After we issued an order to show cause, respondent filed a return in letter form, to which Johnson replied. We have also received an articulate and cogent discussion of the issue in an amicus curiae brief submitted by the California Academy of Appellate Lawyers in support of Johnson's petition.

*Discussion*

Section 77 establishes the appellate division of each county's superior court and prescribes the rules governing its composition and function. Subdivision (a) states that this judicial body consists of "three judges or, when the Chief Justice finds it necessary,

---

[2] In the petition Johnson requested a "writ of review or other appropriate relief." This court elected to treat his application as a petition for writ of mandate.

2

four judges." Subdivision (b), the provision under which respondent attempts to justify its procedure, states: "In each appellate division, no more than three judges shall participate in a hearing or decision. The presiding judge of the division shall designate the three judges who shall participate." Subdivision (d) adds that "[t]he concurrence of two judges of the appellate division of the superior court shall be necessary to render the decision in every case. . . ."

Respondent maintains that its procedure was consistent with both section 77 and the county's local rules of court.[3] Respondent relies on the first sentence of section 77(b), calling for the participation of "no more than three judges" and the first clause of subdivision (d), requiring the "concurrence of two judges . . . to render the decision in every case." (§ 77, subd. (d).) In focusing narrowly on this language, however, respondent has overlooked the maxim that particular words or phrases of a statute "should not be interpreted in isolation, but must be construed in the context of the entire statute of which [they are] a part, in order to achieve harmony among the parts." (*People v. Morris* (1988) 46 Cal.3d 1, 16, disapproved on another point in *In re Sassounian* (1995) 9 Cal.4th 535, 551, fn 5; *People v. Skiles* (2011) 51 Cal.4th 1178, 1185, quoting *People v. Pieters* (1991) 52 Cal.3d 894, 899.) In its resolute emphasis on the condition in subdivision (b) that "no more than three judges shall participate in a hearing or decision," respondent ignores subdivision (a), which specifically defines the appellate division as "consisting of *three judges* or, when the Chief Justice finds it necessary, four judges." (§ 77, subd. (a), italics added.)

In examining statutory language, we give it "a plain and commonsense meaning." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market*,

---

[3] Santa Cruz County Local Rules of Court, rule 8.1.01, enacted January 1, 2013, states: "The provisions of Code of Civil Procedure section 77 and California Rules of Court, 8.800 through 8.891 apply fully to these local rules. Pursuant to CCP section 77(b), appeals and writs may be heard and decided by two judges of the Appellate Division."

*LLC* (2011) 52 Cal.4th 1100, 1107; *Flannery v. Prentice* (2001) 26 Cal.4th 572, 577.) "When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms." (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388.) So viewed, subdivisions (a), (b), and (d) of section 77 plainly denominate a three-judge panel to hear every case, two of whom must concur in order to reach a decision. In dictating the composition of the appellate division the Legislature unquestionably contemplated a structure of three judges hearing and deciding an appeal even if there are four constituting the judicial body as a whole. The phrase "no more than three judges" in subdivision (b) clarifies that even in those counties in which the appellate division comprises four judges, only three of those may participate in a particular case. The next sentence clearly contemplates that three, not two, sit on any one case: "The presiding judge of the division shall designate *the three judges who shall participate.*" (§ 77(b), italics added.)

Resorting to the legislative history of section 77 does not advance respondent's position.[4] The original three-judge "[a]ppellate department" was created in 1929 to hear appeals arising from municipal courts and other inferior courts. (Former § 77a, added by Stats. 1929, ch. 475, § 1, p. 836.) Newly added section 77b of the 1929 legislation required two judges to "transact any business, except such as may be done at chambers, and the concurrence of two judges shall be necessary to pronounce a judgment." (Former § 77b, added by Stats. 1929, ch. 475, § 2, p. 836.)

In 1953 the Legislature enacted and then amended former Government Code section 69540, establishing an appellate department in every county containing three or more superior court judges and a municipal court. (Former Gov. Code, § 69540, added

---

[4] Although the "plain and commonsense meaning" of the current statute makes it unnecessary to examine the legislative history (*People v. Skiles*, *supra*, 51 Cal.4th at p. 1185), we grant respondent's motion for judicial notice of the specified enactments pertaining to section 77 between 1929 and 1998.

by Stats. 1953, ch. 206, § 1, p. 1252, amended by Stats. 1953, ch. 1387, § 1, p. 2969.) The Legislature then amended that legislation, recognizing superior courts of 50 or more judges; in any such county the chairman of the Judicial Council was authorized to appoint four judges to the appellate department. Otherwise, if there were three or more judges in the superior court, three were to serve as the appellate department. (Stats. 1953, ch. 1387, § 1, p. 2969.) The Legislature made it clear, however, that *if* four judges made up the appellate department in those larger courts, "*in such case* no more than three of the judges so designated shall participate in the hearing or decision of any matter coming before the department, and the presiding judge of the department shall designate the judges who shall so participate." (Stats. 1953, ch. 1387, § 1, p. 2969, italics added.)

In 1955 new legislation enacting the present section 77 called for three judges in the appellate department whenever the superior court held three or more judges. (Former § 77, subd. (c)(i), added by Stats. 1955, ch. 527, § 1, p. 1001.) This legislation reflected the earlier qualification when the Chairman of the Judicial Council found it necessary to designate four judges to the appellate department in courts containing 50 or more judges. In *those* departments no more than three of the four judges were to participate in any case, and the presiding judge was to "designate *the three judges who shall so participate*." (Former § 77, subd. (c)(ii), added by Stats. 1955, ch. 527, § 1, p. 1001, italics added.) The statute also stated that although three judges were to *participate* in the hearing or decision of the case, "[t]he concurrence of two judges of such department shall be necessary to *render the decision*." (*Ibid.*, italics added.) The earlier version in former section 77b (requiring only two judges to "transact any business") was repealed, along with former section 77a and former Government Code section 69540. However, the new section 77(b) still permitted the existing number of judges in a superior court to serve as the appellate department if that court consisted of only one or two judges. (Former § 77(b), added by Stats. 1955, ch. 527, § 1, p. 1001.)

5

In 1961 the Legislature dictated that in smaller counties consisting of only one judge, three would still be assured, through the appointment of two other judges from another county or a retired superior court judge or appellate court justice. Larger counties were to designate three judges—or, again, in counties with 50 or more judges in the municipal courts, four judges, if the Chairman of the Judicial Council found it necessary. The 1961 amendment retained the limitation on those larger departments to three participating judges for each case. (Stats. 1961, ch. 937, § 1, p. 2570.)

In 1984 section 77(b) was clarified further with more specific reference to appellate departments of four or more judges: "In an appellate department with four judges, no more than three judges shall participate in a hearing or decision. The presiding judge of the department shall designate the three judges who shall participate." (Stats. 1984, ch. 704, § 1, p. 2614.) Thus, the 1984 amendment retained the 1961 expectation that three judges would participate in every appeal, even where four judges constituted the appellate department.

The revisions after 1984 are consistent with the requirement that three judges participate in hearing and deciding every appeal. The 1998 amendment, which conforms the statute to the unification of the municipal and superior courts, omitted the introductory phrase "In an appellate department with four judges" and retained the language limiting the hearing and decision of the now "appellate division" to three. Also retained was the 1955 provision allowing the concurrence of only two judges to "render the decision" in each case. (Former § 77, subd. (c)(ii).) Nothing in the background of this amendment indicates an intent to change the existing requirement to permit fewer participating judges; on the contrary, the Law Revision Commission comment noted that subdivision (b) "continues the rule that the appellate division sits in panels of three." (Cal. Law Revision Com. com., 13 West's Ann. Gov. Code (2066 ed.) foll § 77, p. 189.)

Taken together, the history of section 77 convinces us that the current version has not altered the nearly 60-year-old requirement that three judges in an appellate division of

6

the superior court hear the matters before them.  As in the Court of Appeal, the concurrence of only two judges is required to render a decision, but three must *participate* in hearing and deciding the case.  It is clear, therefore, that the appellate division in Santa Cruz County erred in insisting that it could proceed without a third judge.  (Cf. *In re Ramirez* (2001) 89 Cal.App.4th 1312, 1319-1320 [appellate division hears and decides cases in three-judge panels].)

*Ets-Hokin v. Appellate Dept. of Superior Court* (1941) 42 Cal.App.2d 326, 328, *Whittaker v. Superior Court* (1968) 68 Cal.2d 357, and *People v. Castellano* (1978) 79 Cal.App.3d 844, 862 do not compel a different result.  The court in *Ets-Hokin* was applying the predecessor of section 77(b), Code of Civil Procedure section 77b, which required only two judges to "transact any business" of the appellate department.  The court in *Whittaker* did not decide whether the hearing of an appeal by one judge violated section 77(b) but only responded to a due process claim of error by holding that the judge's review could not be deemed *inherently* unfair.  Thus, contrary to the People's argument, *Whittaker* does not contribute to an understanding of the procedure required by section 77(b).  Finally, the appellate court in *Castellano* held that the California Constitution authorized two justices to decide an appeal from a judgment in a criminal case.[5]  Whatever limited value that decision brought to the facts before it, we decline to follow the *Castellano* holding in our analysis of section 77(b).

More persuasive is the Supreme Court's reasoning in *Moles v. Regents of University of California* (1982) 32 Cal. 3d 867 (*Moles*), cited by amicus curiae.  In that case three justices of the Court of Appeal heard oral argument in an employment

---

[5]  Article VI, section 3, of the California Constitution states:  "The Legislature shall divide the State into districts each containing a court of appeal with one or more divisions. Each division consists of a presiding justice and 2 or more associate justices. It has the power of a court of appeal and shall conduct itself as a 3-judge court. Concurrence of 2 judges present at the argument is necessary for a judgment."

termination case brought by a university professor against the university Regents. After the argument, however, the presiding justice replaced one of the justices with another who had not heard argument or participated in the matter in any way. The Supreme Court overturned the resulting decision, holding that a judge who has not participated in all stages of the decisionmaking process may *not* be permitted to participate in the final decision and sign the opinion issued by that panel. The court noted that article VI, section 3, of the California Constitution requires a judgment to result from the concurrence of "two judges present at the argument." It explained that "[the] right to oral argument would be an empty right indeed if it did not encompass the right to have one's case decided by the justices who heard the argument. Oral argument provides the only opportunity for a dialogue between the litigant and the bench. As a result, 'it promotes understanding in ways that cannot be matched by written communication.' " (*Moles*, *supra*, at p. 872; see also *Luco v. De Toro* (1891) 88 Cal. 26 [change in composition of the court after oral argument, absent stipulation, required new hearing before the newly constituted court].)

The People nevertheless insist that Johnson "has not shown prejudice from the two-judge procedure employed in this case since only two judges must concur in order to render a decision in an appellate division matter." This argument misses the point. The statute requires three judges to consider a defendant's case, not two. The defendant is entitled to the benefit of whatever influence a third judge may have on the disposition of the appeal. The People cannot simply assume that because two judges concurred in Johnson's case, those two necessarily would have reached the same conclusion had another judge expressed his or her views on the merits of the case. Notably, our Supreme Court rejected the assertion of harmless error in *Moles*: "As one commentator has observed, 'The whole reason for there being more than one judge on an appellate court is that the different perceptions, premises, logic, and values of three or more judges ensure a better judgment. In these differences and in the process of criticism, response, and

8

resolution lies the virtue of the appellate process. The heart of collegiality is unremitting criticism.' " (*Moles*, *supra*, 32 Cal.3d at p. 873, quoting Coffin, The Ways of a Judge (1980) p. 174.)

Because an additional justice participated in the decision of Moles's case, the Supreme Court noted that it was impossible to know how that justice's "perceptions, premises, logic, and values" may have influenced the ultimate decision of the appellate court. (*Moles*, *supra*, 32 Cal.3d at p. 874.) "This court can only speculate about the influence his legal analysis and tentative conclusions had on the other panel members. The only certainty is that the outcome of Moles' appeal could easily have been affected by a justice whom Moles never had an opportunity to address and persuade. His right to attempt that persuasion through oral argument was denied." (*Ibid*.) Although the court in *Moles* was not addressing a situation like that of *Castellano* and the case before us, where the same two judges heard and decided the appeal, the same reasoning can equally apply when considering the complete lack of *any* participation by a third panel member.

In response to our order to show cause, respondent advised us that since January 2014 it has adopted a practice of hearing appeals in panels of three judges rather than two, and that it anticipates amending its local rule 8.1.01 to discontinue the authorization of two-judge panels in the appellate division. Implicitly recognizing that these plans do not rectify petitioner Johnson's current situation, respondent suggests that it would now grant rehearing but lacks jurisdiction to do so. Respondent therefore requests "guidance as to how to proceed." Having concluded that respondent's practice and local rule 8.1.01 violate section 77(b), we will issue the writ of mandate and thereby enable respondent to grant Johnson's rehearing petition.

*Disposition*

Let a peremptory writ of mandate issue directing the appellate division of the superior court to vacate its order denying Johnson's petition for rehearing before a panel of three judges and to issue a new order granting the petition.

9

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

MIHARA, J.


*Johnson v. Superior Court*

H039764

Trial Court:                          Santa Cruz County Superior Court


Trial Judge:                          Hon. Ariadne J. Symons
                                      Hon. Paul P. Burdick


Attorney for Petitioner:              Edwin A. Frey

Attorneys for Amicus                  California Academy of Appellate Lawyers
Curiae for Petitioner:                Steven L. Mayer, Jan T. Chilton, John B. Eisenberg,
                                      Dennis A. Fischer, Lisa R. Jaskol, Robin B. Johansen;
                                      Jay-Allen Eisen Law Corporation, Jay-Allen, and
                                      Aaron S. McKinney

Attorneys for Respondent:             Jarvis, Fay, Doporto & Gibson
                                      Rick W. Jarvis


*Johnson v. Appellate Division of The Superior Court*

H039764