Filed 9/22/25

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | 24APIN00053 |
|     Plaintiff and Respondent, | ) ) | (Inglewood Trial Court No. 215975HA) |
|     v. | ) ) | |
| BARRY W. ROSEN, | ) ) | **OPINION** |
|     Defendant and Appellant. | ) ) ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Emily T. Spear, Judge. Reversed.

Barry W. Rosen, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*         \*         \*

Defendant and appellant Barry W. Rosen appeals the judgment following his conviction of failing to stop for a red arrow signal (Veh. Code, § 21453, subd. (c))[1] in a trial where evidence of the violation was obtained from an automated traffic enforcement system (ATES) (Veh. Code, §§ 21455.5-21455.7). Defendant contends reversal is necessary because the trial court: (1) denied his constitutional right to confront the "actual accusing civilian witness", (2) denied him the constitutional right to testify in his own defense, (3) committed a *Brady*[2] violation by permitting previously undisclosed witnesses and evidence to be presented at trial, (4) refused to consider fully exculpatory evidence, (5) denied defendant the right to conduct necessary discovery prior to trial, (6) refused to consider defendant's "dispositive" motions in limine on the grounds of untimeliness, and (7) was partial and biased. Defendant also contends the notice to appear was invalid *ab initio* because the City of Hawthorne is precluded from operation of the ATES due to a lack of compliance with section 21455.5, and the citation was not issued by a sworn law enforcement officer. As discussed below, we agree with the final point and reverse the judgment on this basis.

## BACKGROUND

On September 10, 2022, defendant was mailed a notice to appear for the offense, alleging the violation occurred at 2:29 p.m. on September 4, 2022, at the intersection of Rosecrans and Hindry in the City of Hawthorne. On the issued notice to appear, City of Hawthorne Police Department civilian employee Alan Valle[3] checked a box on the notice stating, "violation was not committed in my presence. The above is declared on information and belief and is based on photographic evidence." (Capitalization omitted.) The notice further instructed defendant to respond to the charge in court on or before January 9, 2023.

---

[1] Unless otherwise specified, all statutory references are to the Vehicle Code.

[2] *Brady v. Maryland* (1963) 373 U.S. 83.

[3] Testimony at trial revealed that Valle became a sworn police officer after the ticket was issued, but was a civilian employee as the time of its issuance.

On June 22, 2023, defendant appeared in court, entered a not guilty plea, and argued a motion to compel discovery, which was denied. After multiple continuances, a court trial convened August 6, 2024.[4] Defendant and Officer Jimenez[5] appeared for trial and testified.

*Motions in Limine*

Before commencing trial testimony, the court first addressed and denied three motions in limine filed by defendant.[6] The first two motions concerned exclusion of the citation and related evidence and a motion to quash the citation on the grounds of lack of compliance with service and notice requirements.

In his third motion in limine, defendant sought exclusion of the traffic infraction on the grounds that it was unlawfully issued by an unauthorized non-sworn civilian, and because it failed to comply with statutory obligations of section 21455.5. In denying the motion, the court found that the fact that Valle was not a police officer at the time he reviewed and approved the violation did not make the evidence inadmissible. However, the court noted that defendant could use that fact for impeachment purposes.

*Testimony*

Officer Jimenez worked as a police officer since at least 2012 and had "been involved with the red light cameras for at least 10 years." Jimenez was "in charge of the trials for the Redflex camera system" and purported to be "testifying on behalf of Redflex." On September 4, 2022 at 2:29 p.m., the driver of a dark grey 2004 Nissan vehicle was traveling westbound on

---

[4] Unless otherwise specified, any further date references are to the year 2024.

[5] The August 6 minute order reflects that the testifying officer's last name was Valle, however, this appears to be a clerical error as the transcribed record of the electronically recorded proceedings reflects that the last name of the officer who testified at trial was Jimenez, and that defendant cross-examined Jimenez about Valle's status as a non-sworn officer.

[6] The court noted that the motions were untimely because they were filed-stamped on August 6, the first day of trial, but chose to entertain them anyway.
We note that in response to defendant's statement that he had served motions on the City Attorney, the court stated, "The City Attorney is not a party to this case right now. The People are represented by the police." This statement reflects an incorrect understanding of the nature of traffic infractions tried in the absence of a prosecuting attorney. (Gov. Code, §§ 26500, 41803.5; Pen. Code, § 684.) The court also erroneously asked Jimenez—a police officer—if he had any objection to the court's preliminary evidentiary rulings. (See *People v. Marcroft* (1992) 6 Cal.App.4th Supp. 1, 4-5 ["the citing officer who testifies as to the circumstances of the citation is a witness, no more, no less"].)

Rosecrans in the number two left turn lane approaching Hindry. Upon approaching the intersection, the controlling traffic light was red. The vehicle did not make a complete stop behind the limit line, at the line or past the line, traveled westbound on Rosecrans and turned southbound on Hindry. The video capturing the actions described by Jimenez was marked for identification, played for the court and admitted into evidence.

Jimenez laid foundation for the DMV photo and the ATES-generated video stating, "on the left side of the screen you'll see the Cal ID photo matching the driver seated behind the steering wheel of the vehicle that particular day." The court marked for identification the still photo from the video and the DMV photo. Jimenez testified that the videos are secured by Redflex to make sure that they are not tampered with and that no one would be able to access or manipulate the photo or video images, and that he had not altered the photo or video.

On cross-examination, defendant initiated a line of questioning regarding who was permitted or qualified to issue traffic infraction citations under the law. The following colloquy ensued:

"[DEFENDANT]:  Okay.  Are you capable of [giving out a traffic citation]?

"[JIMENEZ]:       Yes.

"[DEFENDANT]:  Okay.  Was Alan Valle capable of doing so?

"[JIMENEZ]:       At the time I -- he wasn't POST[7]-certified."

The court ordered the answer stricken on the grounds that the question was speculative, and the colloquy continued:

"[DEFENDANT]:  Do you know if Officer Valle was qualified in any way, shape or form to issue the citation at issue?

"[COURT]:          The same objection, the same ruling.  Next question."

Another colloquy ensued later in the hearing:

"[DEFENDANT]:  Officer Jimenez, when the city started this red light traffic program, according to City Council documents it says, 'sworn police officers of the city are able to monitor, identify and enforce red light running

---

[7] POST is a commonly known acronym for the Commission on Peace Officer Standards and Training.

violations.' Would that be correct?

"[JIMENEZ]:       I wasn't doing it at the time."

The colloquy again continued:

"[DEFENDANT]:   Okay.  Of your own personal knowledge, do you know if anybody but a sworn police officer can issue a criminal traffic citation?

"[JIMENEZ]:       Like say that again?

"[DEFENDANT]:   Of your own personal knowledge, do you know if anybody, other than a sworn police officer, can issue a traffic citation?

"[JIMENEZ]:       No.

"[DEFENDANT]:   Criminal traffic citation.

"[JIMENEZ]:       I don't know. [¶] . . . [¶]

"[DEFENDANT]:   I'm asking you if anybody, other than a police officer, based on your knowledge and training, can give out a criminal traffic citation.

"[JIMENEZ]:       I'm not aware of that."

Jimenez later testified that the following guidelines are used for citations, "Redflex sends us the citations.  Somebody will -- any staff officer will view the citations and approve it. (*Sic*.)  And then at that point . . . the officer will view it, see if it's a good citation and that's how it gets processed."  When asked by defendant for more "specifics" regarding the issuance of the citation, the following colloquy ensued:

"[JIMENEZ]:       [W]e went to Redflex training where they actually have workers there that know the elements for the violation.  They will record it and send it to us.  At that point, the Hawthorne staff members review the information on the violation, the photographs and the video footage of it, and that's when the citation gets approved, and then it gets sent to court and it goes from there.

"[COURT]:         Do you independently review the evidence?

"[JIMENEZ]:       Yes.

"[COURT]:         Prior to testifying?

"[JIMENEZ]:       That is correct.

"[DEFENDANT]: . . . [T]o the best of your knowledge is Alan Valle . . . at the time of the issuance, was he a police department traffic bureau staff officer?

"[JIMENEZ]: That question was answered yesterday, your honor.

"[COURT]: It was indeed.[8]

"[DEFENDANT]: I don't know if we actually got an actual answer to that.

"[COURT]: He said he was a staff member. That was yesterday.

"[DEFENDANT]: Okay. [¶] And what was his . . . overall position with the police department at that time?

"[JIMENEZ]: At that time, he was a parking enforcement officer.

"[DEFENDANT]: Okay. And is it within his duties to issue traffic citations?

"[JIMENEZ]: Yes."

When later asked by defendant whether Alan Valle actually issued the citation, Jimenez responded, "Based on the citation itself, that has his name on it, . . ."

After denying defendant's motion to dismiss the case pursuant to Penal Code section 1118, the court asked defendant if he had any witnesses to present, to which, defendant responded, "I would like to testify, your Honor." The court replied, "You can testify, but let's also call this closing arguments. Go ahead." The defendant stated, "I really need a couple of minutes to pull all my evidence, and get it ready so that I can get the rest of it admitted." The court declined to give defendant more time and instructed him to proceed. Defendant delivered his closing argument.[9]

---

[8] The prior "answer" that was referenced occurred during the following unsworn argument on defendant's pre-trial motions:

"[DEFENDANT]: [I]t says, 'each violation is reviewed by designated Hawthorne Police Department Traffic Bureau Staff Officer.' Meaning Law Enforcement Officer. If he testifies to that . . . Valle is not that, okay. So, therefore, this is not correct, even in terms of foundation.
"[JIMENEZ]: Your honor, the foundation doesn't say officer, it says the officer of use; he's a parking officer. So, each violation is reviewed by a designated Hawthorne Police Department Traffic Bureau Staff Officer. At the time Officer Valle was a Parking Enforcement Officer."

[9] We note that on appeal defendant contends that the trial court denied him the right to testify on his own behalf. (See *People v. Gutierrez* (2009) 45 Cal.4th 789, 821-822 [the right to a fair trial

6

In finding defendant guilty, the court found that based on the evidence, it appeared that defendant's car entered the intersection when the light was red. The court stated that defendant's car "and the other cars, were stopped in the turn lane before you even got to the point where you would be entering into the intersection. In either case, the light was red when you entered into the intersection and you continued through it."[10]

DISCUSSION[11]

Among defendant's numerous arguments, he contends that the notice to appear was invalid *ab initio* because: (1) the City of Hawthorne is precluded from operation of the ATES due to a lack of compliance with section 21455.5, and (2) the notice was not issued by a sworn law enforcement officer. We review de novo questions of law, including issues requiring statutory interpretation. (*People v. Taylor* (2021) 60 Cal.App.5th 115, 124.)

The filing of a valid accusatory pleading is essential to invoke the jurisdiction of the court. (*Serna v. Superior Court* (1985) 40 Cal.3d 239, 254; *City of San Diego v. Municipal Court* (1980) 102 Cal.App.3d 775, 778; *Beasley v. Superior Court* (2025) 111 Cal.App.5th

includes the right to testify and present relevant evidence on one's own behalf].) As we reverse the judgment on other grounds, we decline to analyze this contention.

[10] On February 27, 2025, defendant moved to augment the record on appeal and requested judicial notice of various documentation. This court denied the motion for judicial notice as it did not comply with California Rules of Court, rule 8.809, and granted the motion to augment in part and denied it in part. Defendant filed a second motion to augment the record on June 10, 2025. The successive motion to augment is denied as untimely. (*People v. Preslie* (1977) 70 Cal.App.3d 486, 492.)

On our own motion, however, we take judicial notice of: (1) Hawthorne Municipal Code sections 2.32.020 and 10.20.000, and (2) the "City of Hawthorne Parking Enforcement Officer II Classification Specification" document attached as exhibit 2 to defendant's August 6 Motion in Limine No. 3. We notified the parties of our intent to take judicial notice of the aforesaid items by order filed August 28, 2025, and afforded the parties an opportunity to file a written response. (Evid. Code, §§ 452, subds. (b), (d), 459, subd. (d).) Both parties filed a response to our notice, and neither party objected to our taking judicial notice of the aforesaid materials.

[11] The appeal was initially taken under submission following oral argument on June 26, 2025. On July 16, 2025, after the retirement of Judge Sanjay Kumar, this court vacated the order taking the matter under submission (Cal. Rules of Court, rule 8.886(b)), and a new panel was assigned to adjudicate the appeal. (Code Civ. Proc., § 77, subd. (b) & (d); *Moles v. Regents of University of California* (1982) 32 Cal.3d 867, 870-874; see *Johnson v. Appellate Division of Superior Court* (2014) 230 Cal.App.4th 825, 828.) A new oral argument hearing convened upon defendant's request.

Supp. 1, 7.) Except as otherwise provided by law, the first pleading on the part of the People in an infraction case is a complaint. (Pen. Code, §§ 19.7, 949.)

Most traffic-related infraction prosecutions are commenced by a peace officer issuing a written notice to appear. (*Beasley v. Superior Court*, *supra*, 111 Cal.App.5th at p. Supp. 7.) A notice to appear prepared by a law enforcement officer, on a form approved by the Judicial Council, serves as a valid substitute for a formal complaint after it is filed with a magistrate. (*Ibid.*; see Pen. Code, §§ 853.5, subd. (a) ["a peace officer" must release a person arrested for an infraction upon satisfactory proof of identification and acceptance of a written promise to appear], 853.6, subd. (d) ["Upon the signing of the duplicate notice [to appear], the arresting officer shall immediately release the person arrested from custody"]; §§ 40500 [effect of a written notice to appear issued by "the arresting officer"], 40513, subd. (b) [written notice to appear filed with magistrate constitutes a complaint]; see also *People v. Barron* (1995) 37 Cal.App.4th Supp. 1, 4-5.) However, a notice to appear must be "statutorily sufficient" to constitute a complaint to which the defendant may enter a plea. (*Beasley v. Superior Court*, *supra*, at p. Supp. 7.)

The law pertaining to citations issued to drivers using evidence generated by an ATES is somewhat different. Section 40518 provides, as pertinent to this case, that a notice to appear for an alleged violation of section 21453 which was recorded by an ATES pursuant to section 21455.5, "constitute[s] a complaint to which the defendant may enter a plea" only when it "has been issued by a peace officer *or by a qualified employee of a law enforcement agency*, . . ." (§ 40518, subd. (a), italics added.)

Here, the evidence was undisputed that Valle was a parking enforcement officer, and not a peace officer, at the time he issued the notice to appear in 2022. A peace officer is "any person officially hired to be a police officer by a city agency (i.e., appointed as and given the duties of a police officer by an official of a city agency authorized to do so)." (*People v. Lara* (1994) 30 Cal.App.4th 658, 666.) Whereas a parking or traffic enforcement officer is "any person employed by a city, county, or city and county to monitor and enforce state laws and local ordinances relating to parking and the operation of vehicles." (Pen. Code, § 243, subd. (f)(8); accord, § 41603 [distinguishing between "peace officers or parking enforcement

8

employees"]; see also *Tyler v. County of Alameda* (1995) 34 Cal.App.4th 777, 780 [parking violations are not crimes, and are instead treated as civil offenses subject to administrative enforcement by "an impartial governmental official presumably trained and experienced in parking violations"].)

Since Valle was not a peace officer, he was authorized to issue the notice to appear only if he was "a qualified employee of a law enforcement agency . . . ." (§ 40518, subd. (a).) The Vehicle Code does not define the term "qualified employee," and we have found no definition in the relevant case law or legislative history materials. When the language used in a statute is unclear, "'"[w]e do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment."'" (*People v. Taylor*, *supra*, 60 Cal.App.5th at p. 124.) Thus, we examine the statutory scheme for ATES violations as a whole.

On the one hand, the ATES laws imply a legislative intent to ensure that a prosecution is not delegated to non-law enforcement officers. For example, section 21455.5 provides that "a governmental agency" operating an ATES shall "[p]erform administrative functions and day-to-day functions, including, . . . [¶] . . . [¶] [m]aintaining controls necessary to ensure that only those citations that have been *reviewed and approved by law enforcement* are delivered to violators." (§ 21455.5, subd. (c)(2)(F), italics added.) A law enforcement officer includes any officer employed by a local government agency "[w]hose primary responsibility is the enforcement of any law, the detection and apprehension of persons who have violated any law, or the investigation and preparation for prosecution of cases involving violation of laws." (Pen.

Code, § 872, subd. (c)(2).) Thus, a law enforcement officer and a parking enforcement officer are not synonymous.

This distinction is critical considering that parking violations are not treated as infractions within the criminal justice system; instead, they are treated as civil offenses subject to civil penalties and administrative enforcement. (§§ 40200, subd. (a), 40203.5, subd. (b); see *Tyler v. County of Alameda*, *supra*, 34 Cal.App.4th at p. 780; see also *City of San Diego v. Municipal Court*, *supra*, 102 Cal.App.3d at p. 778 [parking violation is not "the equivalent of

the filing of a complaint"].)  Conversely, moving violations are processed through the criminal justice system, involve issuance of tickets and traffic stops by peace officers, and criminal court appearances.  (See Pen. Code, §§ 16, subd. (3), 19.6, 691, subd. (g); § 40000.1; see also *People v. McKay* (2002) 27 Cal.4th 601, 615, fn. 16 [traffic infractions are crimes].)  In cases involving the issuance of red light camera tickets, the role of police officers in the evidence review process prior to issuance of the citation is well established.  (See *People v. Goldsmith* (2014) 59 Cal.4th 258, 264 [a "police officer then reviews all photographs before a citation is printed or mailed"].)

On the other hand, we are obligated to presume the Legislature intentionally included the option for an ATES violation to be issued by a non-law enforcement officer who is otherwise a qualified employee of the issuing law enforcement agency.  (See *People v. Kennedy* (2008) 168 Cal.App.4th 1233, 1239.)  The "qualified employee" option only applies to ATES violations.  "A construction rendering some words in the statute useless or redundant is to be avoided." (*Ibid.*; accord, *People v. Taylor*, *supra*, 60 Cal.App.5th at pp. 137-138 [courts do not presume the Legislature performed idle acts or construe statutory provisions so as to render them superfluous].)[12]

In the case at bench, we need not determine who is and is not a qualified employee under section 40518, because the record and the applicable law make clear that Valle was not qualified to issue the notice to appear.  The Hawthorne Municipal Code, of which we have taken judicial notice,[13] designates separate employment positions for an "Automated Enforcement Officer," a "Parking enforcement officer," and a "Police officer."  (Hawthorne Mun. Code, § 2.32.020, subds. (12), (48), (58).)  There is no position for a "Traffic Bureau Staff Officer"—the description of who reviews potential ATES violations for the City of Hawthorne that was posited by Jimenez during argument on defendant's pre-trial motions.

---

[12] Presumably the Legislature may have intended greater flexibility with ATES violations which do not involve the formality and dangers associated with infraction citations issued following a traffic stop by a peace officer.
[13] *Ante*, fn. 10.

The Hawthorne Municipal Code also defines a "Police Officer" as "[e]very sworn member of the police department or any employee of the city authorized by the chief of police to direct or regulate traffic or to make arrests for violations of the traffic regulations." (Hawthorne Mun. Code, § 10.20.000.) Whereas a "Parking control officer[] [m]eans a member of the police department authorized by the chief of police to make arrests and issue citations for violations of parking prohibitions and regulations and whose chief duties are to patrol designated areas of the city to discover violations of parking restrictions and regulations and to generally enforce parking regulations and do the related work required in accordance with the class specification of this position." (*Ibid.*)

Additionally, we have taken judicial notice of the November 2020 "City of Hawthorne Parking Enforcement Officer II Classification Specification" document which was filed as an exhibit to defendant's motion in limine to "exclude" the notice to appear. The document, according to defendant's supporting declaration, was a true and correct copy of the City of Hawthorne's response to defendant's discovery and California Public Records Act (Gov. Code, § 7920.000 et seq.) requests in a civil case he brought against the city also related to this citation. The document includes a job summary and a list of the essential duties and responsibilities of Valle's position as a parking enforcement officer. The job summary states: "The Parking Enforcement Officer II - although not a sworn position, reports to and receives guidance and direction from the Watch Commander and/or the Watch Commander's designated assistants. Under general supervision, patrols assigned areas in the *enforcement of all parking laws and regulations* as per department rules and regulations." (Italics added.) The essential duties and responsibilities list is limited to the enforcement of parking laws and regulations, with no reference to ATES citations or any other moving violations.

Based on the present record, combined with the Hawthorne Municipal Code, Classification Specification, and the testimony of Jimenez, Valle was unqualified to issue the notice to appear. Given that Jimenez testified that he independently reviewed the ATES recordings only prior to testifying, his review necessarily took place *after* the notice to appear was delivered to defendant, and therefore, also fails to satisfy the statutory requirements. The notice to appear issued by a civilian employee was statutorily insufficient to invoke the

jurisdiction of the court, meaning "the case can only proceed if the prosecutor files a traditional complaint." (*Beasley v. Superior Court*, *supra*, 111 Cal.App.5th at p. Supp. 7; accord, *People v. Garnett* (1973) 31 Cal.App.3d 255, 257 ["Until a [prosecuting] attorney elects to proceed with a criminal prosecution, files a complaint . . . and then obtains a conviction, an alleged offense is not punishable in any manner"]; see also Pen. Code § 19.7 ["except as otherwise provided by law, all provisions of law relating to misdemeanors shall apply to infractions including, but not limited to, powers of peace officers, jurisdiction of courts, periods for commencing action and for bringing a case to trial and burden of proof"].) Defendant's prosecution, initiated by an invalid accusatory pleading, cannot stand.

DISPOSITION

The judgment is reversed.


                                                  _____

                                                  Guillemet, J.

We concur:


_____                    _____

P. McKay, P. J.                                              Ricciardulli, J.